J-A30012-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SAMNEANG SAMNEANG | |
| Appellant | No. 1824 EDA 2013 |

Appeal from the Judgment of Sentence June 13, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001092-2012

BEFORE:  LAZARUS, J., MUNDY, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                **FILED JANUARY 30, 2015**

Samneang Samneang[1] appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County. After our review, we affirm in part, and vacate and remand in part, and we rely upon the opinion authored by the Honorable Charles J. Cunningham, III.

On November 1, 2011, Samneang and his co-defendant, Kanika Oum,[2] shot a fifteen-year old boy in the face near the intersection of 75th Street and Buist Avenue in Southwest Philadelphia.  Following trial, a jury convicted

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant's name is Samneang Sin, however he was charged and tried as Samneang Samneang.  **See** N.T. Trial, 2/27/13, at 49-50.

[2] Co-defendant Oum's related appeal is docketed at 1939 EDA 2013.

Samneang of attempted murder,[3] criminal conspiracy,[4] aggravated assault,[5] violation of the Uniform Firearms Act (VUFA),[6] and possession of an instrument of crime (PIC).[7]

The court sentenced Samneang to a term of imprisonment of 15-30 years for attempted murder, a consecutive term of 5-10 years on the conspiracy conviction, and a consecutive term of 2-5 years on the VUFA conviction, for an aggregate term of 22-45 years' imprisonment. The court imposed no further penalty on the PIC conviction. The court also determined the aggravated assault conviction merged for sentencing purposes.

Samneang filed a timely appeal to this Court. On June 21, 2013, the trial court ordered Samneang to file a Pa.R.A.P. 1925(b) Statement of Errors Complained of on Appeal. In his Rule 1925(b) statement, Samneang raised nine issues, five of which he has carried forward for our review:

> 1. The trial court through words, deeds and rulings compromised appellant's ability to win the trial by nullifying the effectiveness of essential points being made by the defense such that he did not receive a fair trial;

---

[3] 18 Pa.C.S. §§ 901(a), 2502(a).

[4] 18 Pa.C.S. §§ 903(a), 2502(a).

[5] 18 Pa.C.S. § 2702(a).

[6] 18 Pa.C.S. § 6106.

[7] 18 Pa.C.S. § 907(a).

2. The trial court erred in not allowing the defense to ask about the other two identification witnesses who were unable to identify appellant and by preventing defense counsel from questioning and attacking the identification procedure;

3. The trial court erred in allowing the hearsay testimony regarding what others said that Seagull Mok said;

4. It was constitutional error for the Commonwealth to assert that the defense should call witnesses to rebut the Commonwealth case;

5. The trial court erred in sentencing appellant for two inchoate crimes, i.e., attempted murder and conspiracy to commit attempted murder.

Appellant's Brief, at 14.

Upon review of the parties' briefs, the relevant law, and the record as a whole, we find that Judge Cunningham has correctly disposed of issues 1-4 in his opinion. **See** Opinion, 2/7/14, at 8-18. Therefore, we affirm the convictions based on Judge Cunningham's opinion.

With respect to Samneang's fifth issue, the trial court acknowledged in its Rule 1925(a) opinion that Samneang's sentence was illegal. The court sentenced Samneang to 15-30 years for attempted murder, and a consecutive term of 5-10 years on the conspiracy to commit murder conviction. As the trial court recognized, Samneang could not be sentenced for two inchoate crimes for conduct designed to culminate in the same offense, that is, murder. Section 906 of the Crimes Code precludes conviction of more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy "for conduct designed to commit

or to culminate in the commission of the same crime."  18 Pa.C.S. § 906. *See Commonwealth  v. Kelly*, 78 A.3d 1136 (Pa. Super. 2013) (sentence for conspiracy to commit attempted murder and attempted murder should have merged); *see also Commonwealth v. Martinez*, 438 A.2d 984 (Pa. Super. 1981) (where criminal conspiracy to commit burglary and subsequent attempted burglary constituted "conduct designed to culminate in the commission of the same crime," that is, burglary, defendant should not have been sentenced for both attempt and conspiracy, but should have only been sentenced for one or the other);  *Cf. Commonwealth v. Jacobs*, 39 A.3d 977 (Pa. 2012) (where defendant's convictions for two inchoate crimes had separate criminal purposes they did not merge).

We agree with Judge Cunningham's post-sentence assessment. Therefore, we vacate the judgment of sentence and remand for resentencing in accordance with 18 Pa.C.S. § 906.  *See Commonwealth v. Watts*, 465 A.2d 1267 (Pa. Super. 1983). Counsel is directed to attach a copy of the trial court's opinion in the event of further proceedings in this matter.

Affirmed in part; vacated and remanded in part. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/30/2015

COURT OF COMMON PLEAS

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA : 

v. :

SAMNEANG SAMNEANG :

1824 EDA 2013

CP-51-CR-0001092-2012

OPINION

FILED

DEC 19 2013

Criminal Appeals Unit
First Judicial District of PA

## STATEMENT OF THE CASE

Defendant appeals his conviction for attempted murder, criminal conspiracy and other related charges arising out of Defendant's participation in a shooting which occurred on November 1, 2011. Defendant raises numerous complaints regarding evidentiary rulings made by the Court during his trial. These complaints are without merit. Defendant also correctly complains that he was improperly sentenced on two inchoate crimes.

## PROCEDURAL HISTORY

On November 7, 2011 Defendant was arrested and charged with inter alia, 1) Criminal Attempt pursuant to 18 Pa.C.S.A. 901(a) to commit Murder pursuant to 18 Pa.C.S.A. 2502; 2) Aggravated Assault pursuant to 18 Pa.C.S.A. §2702(a); 3) Criminal Conspiracy pursuant 18 Pa.C.S.A. 903(a) to commit Murder pursuant to 18 Pa.C.S.A. 2502; 4) Firearms not to be carried without a license pursuant to 18 Pa.C.S.A. §6106(a)(1); and 5) Possession of an Instrument of a Crime With Intent pursuant to 18

1

Pa.C.S.A. 907(a). On March 4, 2013, at the conclusion of his jury trial Defendant was found guilty of the above charges. On June 13, 2013 Defendant was sentenced to three consecutive terms of confinement in a state correctional facility of fifteen to thirty years on the charge of attempted murder, five to ten years on the charge of conspiracy to commit murder and two to five years on the charge of carrying a firearm without a license, for a total period of confinement of twenty-two to forty-five years. The charge of aggravated assault having merged with the charge of attempted murder no penalty was assessed. As to the charge of possession of an instrument of a crime, a determination of guilt without further penalty was made.

On June 17, 2013, Defendant timely filed the instant appeal to the Superior Court of Pennsylvania. On June 21, 2013, this Court filed and served on Defendant an Order pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, directing Defendant to file and serve a Statement of Errors Complained of on Appeal, within 21 days of the Court's Order. On June 21, 2013 Raymond David Roberts, Esq. was appointed to represent Defendant as appellate counsel. On July 5, 2013, Defendant filed his: "Petition for Extension of Time in Which to File a Concise Statement." On July 10, 2013, the Court entered an Order granting Defendants motion. On September 3, 2013 the complete notes of testimony became available.[1] On August 21, 2013 Defendant timely filed his Statement of Errors Complained of on Appeal raising nine issues namely:

1. "At NT 2-27-13 p. 122-123, Counsel attempted to show contradictions in the complainant's testimony with regard to his statement. (p. 122 L. 18-24). The complainant says he doesn't remember making the statement. Counsel hands it to him to read/refresh his recollection so

---

[1] On August 5, 2013 the trial and sentencing notes of testimony became available. On September 3, 2013 the notes of testimony relating to the rendering of the jury's verdict and the polling of the jury became available.

as to further probe the credibility but the trial court refuses to allow him to do so by announcing to the jury that the complainant does not remember and thereby preventing/compromising counsel's ability to explore an opportunity to test the witnesses' credibility and demeanor.

2. At NT 2-27-13 p. 132 L 5-6, counsel attempts to show that it would be difficult/impossible for the complainant to run with the gun in his waist and thereby prove that he had the gun out when he ran toward appellant's car. The trial court mocked counsel in front of the jury thereby compromising the effectiveness of this tactic by suggesting that counsel's question was not sensible regarding the complainant having a holster. "Who would have a holster?" He admitted he couldn't cock the gun or run with it in his pants. p. 132.

3. The trial court took away an effective means of advocacy and compromised the defense case by indicating that it's not proper to question a witness with a prior statement in mind without first giving the witness the prior question and answer---p. 134. (see bottom p. 137 and top of 138—didn't see shooter or driver in his statement).

4. The trial court violated appellant's due process rights. Seagull Mok did not appear on the day he was to testify. Although, there was not testimony he was served a subpoena, the court issued a bench warrant – indicating it would consider allowing the hearsay – or consider an unavailability motion 2-28-13 p. 5-6.

5. The trial court erred in not allowing the defense to ask about the other two identification witnesses who were unable to identify appellant. NT 2-28-13 p. 7-9.

6. Defense counsel raised a valid point/issue for the jury's consideration as to whether the fillers were fair fillers so as to argue the possibility of misidentification to the jury. The trial court eviscerated counsel's ability to make such an argument by suggesting to the jury as the giver of the law in the courtroom that such an argument was not logical. NT 2-28-12 p. 24-25 and 27.

7. The trial court erred in allowing onerous and undue attention to be attached to the testimony of Seagull Mok first by allowing the testimony of Vyreck Oum as to what he was told by Seagull Mok and

3

then allowing two separate officers to testify as to what Vyreck Oum told them that Seagull Mok told them. 2-28-13 p. 81-82 then pp. 87-88.

8. There was reversible error when the prosecutor advised the jury that the defense had a burden and had failed to fulfill it by not calling witnesses. 3-1-13 p. 118.

9. The trial court erred in sentencing appellant for two inchoate crimes, i.e. attempted murder and conspiracy to commit attempted murder."

## WAIVER

The Pennsylvania Rules of Appellate Procedure provide at *Pa. R.A.P. 302 (6)* "issues not raised in the lower Court are waived and cannot be raised for the first time on appeal". The Courts of Pennsylvania have reiterated that matters not raised at trial are deemed waived and cannot be raised on appeal. ***Commonwealth v. Clair***, 458 Pa. 418, 326 A.2d 272 (1974) Raising the issue for the first time in a 1925(b) Statement of Errors will not preserve the issue for appeal. ***Commonwealth v. Melendez-Rodriguez***, 856 A.2d 1278 (Pa. Super. Ct. 2004)

A careful review of the record reveals that Defendant raises his 1st, 2nd 3rd, 4th and 6th complaints for the first time in his Statement of Errors. Since the Court was denied an opportunity to consider these complaints at trial they are deemed waived and will not be addressed below.

## EVIDENCE AT TRIAL

The complainant, Quenzel Members, testified that on the evening of November 1, 2011 he was fifteen years old when, at approximately 7:30 p.m., he was walking with three of his friends, Shyeheim, Nasir and Sammy, when he encountered two Asian males

4

in the vicinity of 75th Street and Buist Avenue in the Southwest section of Philadelphia. (N.T., 2/27/2013, pgs. 81, 83) As he approached, he noticed one of the males, he identified as Defendant, leaning over a dark colored Honda and the other male sitting in the car. He further described the Honda as having blue headlights and a loud motor. (N.T., 2/27/2013, pgs. 84, 90-93, 97) As he drew near, a verbal argument ensued and ended when Defendant told the person inside the car "it's enough playing, pop the trunk." (N.T., 2/27/2013, pgs. 83, 85, 90, 91, 120) Taking this to mean Defendant "probably" had a gun, Mr. Members immediately left the scene going to Shyeheim's house on the next block. (N.T., 2/27/2013, pgs. 86, 88)

Mr. Members testified that, while sitting on the front steps of Shyeheim's house, he noticed the same car circling the block several times and acting "like they was looking for me." (N.T., 2/27/2013, pg. 93) He identified Defendant as sitting in the passenger seat of the car. (N.T., 2/27/2013, pgs. 110, 112, 133) He also testified that, on seeing this, he "felt threatened" and went to his own home, a short distance away, retrieved a .9 mm semi automatic hand gun from his back yard and returned to his friends. (N.T., 2/27/2013, pgs. 94-96)

Not seeing the car after returning, he and his friends went to a park "five or six" blocks away and returned about five or ten minutes later. (N.T., 2/27/2013, pgs. 97-99) As they entered the alley behind Shyeheim's house, Mr. Members heard the engine of the car and then saw the blue headlights when it turned into the alley ahead of them. (N.T., 2/27/2013, pgs. 97-99) The car then approached and stopped next to him. Mr. Members saw the passenger window of the car roll down and was shot once in the face from inside the passenger side of the car. (N.T., 2/27/2013, pgs. 100-102)

5

After being shot, Mr. Members ran back to his house, with two of his friends and called 911 for help and to report the shooting. (N.T., 2/27/2013, pgs. 102-104) He also testified that the responding police officers immediately placed him the back of their patrol car and "rushed" him to the hospital for treatment. (N.T., 2/27/2013, pg. 104)

While in the hospital, Mr. Members positively identified Defendant as his assailant from a photo array prepared by the investigating detectives. (N.T., 2/27/2013, pgs. 110, 112, 113) Mr. Members again identified Defendant as his assailant at a line up conducted after leaving the hospital. (N.T., 2/27/2013, pg. 115)

Corroborating Mr. Members' testimony, Mr. Nasir Abdul-Raheem (Nasir),[2] testified that on the evening of November 1, 2011 at approximately 7:30 p.m., while walking with Mr. Members and two other friends they encountered two Asian males in the vicinity of 75th Street and Buist Avenue in the Southwest section of Philadelphia. (N.T., 2/27/2013, pgs. 146, 147) As they approached, he noticed one of the males, he identified as Defendant, leaning over a dark colored Honda and talking to the other male sitting in the car. He further described the Honda as having blue headlights and a loud motor. As they drew near, a verbal altercation ensued between Mr. Members and Defendant ending when Defendant told the person inside the car to "pop the trunk." On hearing this he and his friends went to Shyeheim's house on the next block. (N.T., 2/27/2013, pgs. 147, 148, 151-154)

Nasir testified that, on arriving at Shyeheim's house, Mr. Members announced he was going to get "the gun." (N.T., 2/27/2013, pg. 153) Nasir, observing the Honda circling the block "five or six times" in a slow deliberate manner felt nervous and scared

---

[2] Nasir testified that at the time of trial he was sixteen years old, making him fourteen years old on November 1, 2011.

6

prompting him to hide behind a van parked in front of the house. (N.T., 2/27/2013, pgs. 154, 155)

Nasir also testified that when Mr. Members returned with a gun, the group went to a park and stayed approximately fifteen minutes before returning to Shyeheim's house. (N.T., 2/27/2013, pgs. 155, 156) As they approached the back of the house through the alley, Nasir observed the Honda approach them and stop next to them in the middle of the alley. (N.T., 2/27/2013, pgs. 156, 157, 158) Nasir then heard three shots and saw that Mr. Members, who was standing next to him, had been shot. (N.T., 2/27/2013, pgs. 156, 157, 158)

Philadelphia Police Detective Bill Urban testified that he is the lineup supervisor responsible for conducting all Court ordered lineups in the city. (N.T., 2/28/2013, pgs. 10, 11) He testified that on January 12, 2012 he conducted a lineup at which both Mr. Members and Nasir identified Defendant as the passenger. (N.T., 2/28/2013, pgs. 17, 19, 20) Detective Urban testified further that, prior to the commencement of the lineup, Defendant's counsel at that time, although given an opportunity, did not object to its composition. (N.T., 2/28/2013, pgs. 28, 29)

Mr. Seagull Mok testified that on November 1, 2011, while dropping his car off in front Vyreak Oum's house for repairs, he observed a black Honda Accord with two occupants pull up in front of the house. He described the car as having "purple" headlights and a loud muffler. He testified that Defendant exited the car and asked him where Vyreak was. (N.T., 3/1/2013, pgs. 9-12) He described Defendant as being "kind of mad about something" and saying he "was going to fuck the bull up, or something like that." (N.T., 3/1/2013, pgs. 12, 13) After this exchange, Defendant got back in and the

7

car left the scene. Mr. Mok testified that, approximately five minutes later, he heard gun shots and saw the Honda at the end of the block. (N.T., 3/1/2013, pgs. 15, 16, 21, 22, 33) Mr. Mok then called Vyreak telling him not to come outside. (N.T., 3/1/2013, pg. 17)

Mr. Vyreak Oum testified that on the evening of November 1, 2011 he went directly to bed at approximately 7:05 p.m. after returning from work. (N.T., 2/27/2013, pgs. 187, 188) Sometime after going to bed he was awakened by a phone call from Mr. Mok, who told him he was in front of his house dropping his car off for repairs and told him "don't come out here, there's gunshots." (N.T., 2/27/2013, pgs. 189, 192-195)

Shortly after this conversation, the police arrived at his door, arrested him and took him to Southwest Detectives where he gave a formal signed statement. (N.T., 2/27/2013, pgs. 196, 197) In his statement Mr. Oum stated that, after going to bed, "I got a phone call from a friend named Seagull Mok stating my cousin, Kanika Oum, and another guy named Sam[3] came around in a black Honda Accord to 7400 block of Buist Avenue and asked for me." (N.T., 2/27/2013, pgs. 201, 202) "Seagull then stated that Sam shouted out from the passenger window, I'm going to kill this -- I'm going to kill the boy while they were in the car." (N.T., 2/27/2013, pg. 205) On concluding the call, he stated: "Seagull then told me not come outside and hung up." (N.T., 2/27/2013, pg. 208)

## DISCUSSION OF THE ISSUES RAISED

I.    **IT WAS PROPER TO LIMIT DEFENDANT'S CROSS EXAMINATION OF DETECTIVE URBAN TO THOSE IDENTIFICATION WITNESSES TESTIFIED TO BY HIM AT TRIAL.**

---

[3] Mr. Oum identified "Sam" as Defendant. (N.T., 2/27/2013, pg. 212)

8

Defendant's fifth complaint, complains that the "trial court erred in not allowing the defense counsel to ask about the other two identification witnesses who were unable to identify appellant." Prior to presenting the testimony of Detective Urban, who conducted the lineup prior to trial, counsel for the Commonwealth petitioned the Court for a ruling limiting the scope of Defendant's cross examination only to those identification witnesses testified to by Detective Urban and not to address other "identifications" that other witnesses "did or did not make at that lineup." (N.T., 2/28/2013, pg. 7) Although this issue is deemed waived because Defendant did not object to the Court's ruling at trial and is raised for the first time in his Statement of Errors, counsel for his co-defendant did object in a timely manner giving the Court an opportunity to address the issue at trial. Defendant's complaint is without merit.

The recently amended Pennsylvania Rules of Evidence (Pa.R.E.) provide in part at Rule 803.1 "The following statements are not excluded by the rule against hearsay if the declarant testifies and is subject to cross-examination about the prior statement: "(2) Prior Statement of Identification by Declarant-Witness. A prior statement by a declarant-witness identifying a person or thing, made after perceiving the person or thing, provided that the declarant-witness testifies to the making of the prior statement." The crucial element in deciding on the admissibility of such identification testimony is whether or not the declarant testifies at trial and is subject to cross examination. *Commonwealth v. Wilson*, 580 A.2d 439 (Pa. 2001) It is clear that the rationale for the Rule 803.1 applies to both a declarant's ability to make an identification as well as his failure to make an identification. The obvious purpose of the rule is to allow the

9

opposing party the opportunity to test the veracity of the declarant's statement either way.

In seeking the Court's ruling, counsel for the Commonwealth made it clear that he was not going to call the two witnesses who had also attended the lineup but were unable to identify Defendant. (N.T., 2/28/2013, pgs. 7, 9) Furthermore, there was no evidence on the record that these witnesses were present in the courtroom. In making its ruling, the Court reiterated its understanding of Pa. R.E. 803.1 stating: "I think identification is an exception to hearsay, provided the witness is present and can be cross-examined." (N.T., 2/28/2013, pgs 8)

## II. THE ADMISSION OF IDENTIFICATION TESTIOMNY WAS RELEVANT AND PROBATIVE.

Defendant in his seventh complaint, complains: "The trial court erred in allowing onerous and undue attention to be attached to the testimony of Seagull Mok first by allowing the testimony of Vyreak Oum as to what he was told by Seagull Mok and then allowing two separate officers to testify as to what Vyreak Oum told them that Seagull Mok told them." Defendant misstates the record. Vyreak Oum did testify that he received a phone call immediately after the shooting from Seagull Mok. Only one other witness, Detective Deayoung Park, who took a signed statement from Mr. Oum, testified with regard to the phone call from Mr. Mok. Defendant's complaint is without merit.

As previously noted, Pa.R.E. at Rule 803.1 provides for the admission of a "prior statement by a declarant-witness identifying a person or thing, made after perceiving the person or thing, provided that the declarant-witness testifies to the making of the prior

10

statement." Rule 803.1 further provides: "(1) Prior Inconsistent Statement of Declarant-Witness. A prior statement by a declarant-witness that is inconsistent with the declarant-witness's testimony and:...(B) is a writing signed and adopted by the declarant."

As noted above, Mr. Mok was in front Mr. Oum's house immediately prior to the shooting of Mr. Members and was able to clearly identify the occupants of the vehicle involved in the shooting. Mr. Oum's testimony that Mr. Mok had seen the car involved in the shooting and could identify its occupant's is clearly admissible pursuant to Pa.R.E. 803.1(2).

Detective Park testified that he took a signed written statement from Mr. Oum on November 2, 2011, shortly after Mr. Members was shot. (N.T., 2/28/2013, pgs. 81, 84) Detective Park testified that when he asked him what he knew about the shooting Mr. Oum responded that he had received a phone call from Mr. Mok who told him: "Kinika Oum and another Asian guy named Sam came around in a black Honda Accord to the 7400 block of Buist Avenue and asked for me. Seagull said they didn't say why they were looking for me, but Seagull told them that he didn't know where I was. Seagull then said that Sam shouted out from the passenger's side window, 'I'm going to kill the boy', while they were in a car. Seagull then said Kinika drove away. Within a minute Seagull said he heard gunshots coming from my cousin, Kinika's, Honda Accord. Seagull told me that he got into one of his friend's car and left the area. Seagull then told me not to come outside and he hung up." (N.T., 2/28/2013, pgs. 87- 89) When asked if Mr. Mok told him who was driving the car, Mr. Oum responded: "My cousin, Kinika Oum, and Sam was the front passenger." (N.T., 2/28/2013, pg. 90) Since Detective Park's testimony was

11

confined to the written statement he took from Mr. Oum and Mr. Mok did appear and testify it was clearly admissible pursuant to Pa.R.E. 803.1(1)(B).

Prior to admitting the testimony of both Mr. Oum and Detective Park, the Court made it clear that the testimony was being admitted solely on the condition that Mr. Mok would in fact testify and be subject to cross examination. (N.T., 2/27/2013, pg. 193) (N.T., 2/28/2013, pgs. 82, 88) Prior to permitting the testimony of Detective Park to proceed regarding the statement he took from Mr. Oum as it pertained to the call from Mr. Mok, the Court cautioned the jury: "As you will recall, we went through this when Vyreak Oum testified. And what I told you at that time was that these statements by Mok were admissible only if Mok comes in and appears before you and testifies before you. Otherwise, it's hearsay and they can't come in. And at that time I overruled the objection of defense counsel saying that somebody has to testify first. And we don't bring in three or four witnesses and have them all testify at the same time. And the DA said that Mok would be in, so we're waiting to see. Until then, you can listen to what he says." (N.T., 2/28/2013, pg. 88) Mr. Mok did in fact testify and was subject to cross examination by Defendant.

"Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision on such a question absent a clear abuse of discretion." *Commonwealth v. Maloney*, 876 A.2d 1002, 1006 (Pa. Super. 2005) "An abuse of discretion is not merely an error in judgment, but an 'overriding misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence or the record.'" *Commonwealth v. Flamer*, 53 A.3d 82, 86 (Pa. Super. 2012)

12

citing *Commonwealth v. Cascardo*, 981 A.2d 245, 249 (Pa.Super.2009) Our Superior Court in *Commonwealth v. Johnson,* 758 A.2d 166, 173 (Pa. Super. 2005), held: "The basic requisite for the admission of any evidence in a case is that it be competent and relevant. Though relevance has not been precisely or universally defined, the courts of this Commonwealth have repeatedly stated that evidence is admissible if, and only if, the evidence logically or reasonably tends to prove or disprove a material fact in issue, tends to make such fact more or less probable, or affords the basis for or supports a reasonable inference or presumption regarding the existence of a material fact." (internal citations omitted).

Pa.R.E. at Rule 403 provide that "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. "Evidence is not unfairly prejudicial simply because it is harmful to the defendant's case. Rather, exclusion of evidence on this ground 'is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case.'" *Id.* **Commonwealth v. Foley**, 38 A.3d 882, 891 (Pa. Super. 2012)

The testimony of both Mr. Oum and Detective Park was obviously "harmful to Defendant but was not "unfairly prejudicial" to him. This is particularly so in light of the admission into evidence, without objection, of transcripts of Defendant's phone conversations recorded while he was incarcerated awaiting trial. In the first transcript Defendant tells the party on the other end: "Yeah . The bull, Seagull from South Philly. He came the first time, but he switched it. He made a different statement, but I can't let

13

him show up and shit." (N.T., 2/28/2013, pg. 108) The transcript from yet another conversation revealed:

> **Defendant**: "Fucking nut ass Seagull made a statement on me, too."
> **Male**: "Yeah? Want me to go and talk to the nigga? Want me to go talk to him?"
> **Defendant**: "We already got somebody to talk to him, but that bitch ass nigga came to court last time, but now we're trying to get somebody to talk to him to tell him not to come to court."
> **Male**: "Yeah, they'll do it." (Inaudible.)
> **Defendant**: "Man, if I do get out of here, I'mma fuck that nigga up."
> (N.T., 2/28/2013, pg. 109)

It is clear from the transcripts that Defendant was attempting to prevent Mr. Mok from testifying or, at the very least, influence his testimony. The testimony of Mr. Oum, as well as his written statements, is relevant as to the identity of the occupants of the Honda and portrays Mr. Mok's present sense observations before Defendant had an opportunity to intimidate him, or anyone else, or otherwise influence his testimony.

## III. COUNSEL FOR THE COMMONWEALTH'S COMMENT DID NOT WARRANT A MISTRIAL.

Defendant in his eighth complaint, complains; "There was reversible error when the prosecutor advised the jury that the defense had a burden and had failed to fulfill it by not calling witnesses." This issue is again deemed waived because Defendant did not timely object at trial and is raised for the first time in his Statement of Errors. However, the Court had an opportunity to address the issue when counsel for Co-Defendant raised a timely objection on making a motion for a mistrial. Defendant's complaint is without merit.

A defendant's Motion for a Mistrial is provided for in Pennsylvania Rules of Criminal Procedure (Pa.R.Crim.P.) at Rule 605 (B) which provides: "When an event

14

prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity." "Every unwise or irrelevant remark made in the course of the trial by judge, a witness, or counsel, does not compel the granting of a new trial. A new trial is required when the remark is prejudicial; that is, when it is of such a nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial." *Commonwealth v. Goosby*, 450 Pa. 609, 301 A.2d 673 (1973).

The Superior Court of Pennsylvania has discussed the issues to be considered in the granting of a mistrial. In *Commonwealth v. Hudson*, 955 A.2d 1031, 1034 (Pa. Super. 2008), citing *Commonwealth v. Tejeda*, 834 A.2d 619, 623 (Pa. Super. 2003) our Superior Court held that "A motion for a mistrial is within the discretion of the trial court. [A] mistrial [upon motion by one of the parties] is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial. On appeal, our standard of review is whether the trial court abused that discretion. An abuse of discretion is more than an error of judgment. On appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised by the trial court was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." *Hudson* concluded the "inquiry into whether prejudice has accrued is necessarily a fact specific one." *Id.*, at 1034.

15

Our Superior Court, in *Commonwealth v. Bracey*, 831 A.2d 678, 682 (Pa. Super. 2003), citing *Commonwealth v. Stilley*, 455 Pa. Super. 543, 689 A.2d 242, 250 (Pa. Super. 1997), held that "A mistrial is an 'extreme remedy . . . [that] . . . must be granted only when an incident is of such a nature that its unavoidable effect is to deprive defendant of a fair trial.' A trial court may remove taint caused by improper testimony through curative instructions. Courts must consider all surrounding circumstances before finding that curative instructions were insufficient and the extreme remedy of a mistrial is required. The circumstances which the court must consider include whether the improper remark was intentionally elicited by the Commonwealth, whether the answer was responsive to the question posed, whether the Commonwealth exploited the reference, and whether the curative instruction was appropriate." (Citations omitted.)

"Because a criminal trial is an adversary proceeding, the prosecution as well as the defense must be allowed reasonable latitude in presenting its case to the jury." *Commonwealth v. Paddy*, 800 A.2d 294, 316 (Pa. Super. 2001) A prosecutor is generally allowed to vigorously present and argue his case, as long as the comments are supported by evidence and contain inferences which are reasonably derived from that evidence. It is well-settled law that attorneys' statements or questions at trial are not evidence. The focus of this Court's consideration of claims regarding prosecutorial misconduct is to determine whether the defendant was deprived of a fair trial and not whether the defendant was deprived of a perfect trial." *Commonwealth v. Kemp*, 753 A.2d 1278, 1282 (Pa. 2000) Our Supreme Court later explained that "prosecutorial misconduct does not occur unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the

16

defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict." *Commonwealth v. Cuevas*, 832 A.2d 388, 394 (Pa. 2003) Furthermore, the "Commonwealth may 'fairly respond' to closing remarks made by the defense." *Commonwealth v. Brown*, 449 Pa. Super. 346, 357-58, 673 A.2d 975, 981 (Pa. Super. 1996) Additionally, "comments by a prosecutor, which would otherwise be in error, have been held not to be erroneous if made in response to a defense argument." *Brown, Id.*, 673 A.2d at 981, citing *Commonwealth v. Fielder*, 417 Pa. Super. 455, 612 A.2d 1028 (Pa. Super. 1992)

Defendant in his complaint mischaracterizes counsel for the Commonwealth's closing argument. During his closing argument counsel for Defendant stated: "Four witnesses, half of that is two. They called two. They called Nasir and Quenzel." (N.T., 3/1/2013, pg. 86) In response to this comment, in his closing argument, counsel for the Commonwealth stated:

> "Ladies and gentlemen, I want to just briefly address a couple things that the defense attorney said to you about the witnesses, that I only called -- told you half the story.......You know, it's so funny and it's so disingenuous for the defense attorney to get up here and say that, that I gave you half the story as if somehow he's handcuffed. Folks, the burden of proof is on me. It never shifts. It's my burden to prove my case. But you know what, folks, it is -- it's fairness. It's all about fairness. If I don't call witnesses, there's nothing preventing the defense attorney from subpoenaing people into the courtroom. If he thinks I'm not telling the whole story or I'm not giving you the whole truth or I'm misrepresenting something or hiding something, he can call witnesses. He could have called them. He could have called them." (N.T., 3/1/2013, pgs. 117, 118)

At this juncture counsel for Co-Defendant objected. In response the Court instructed the jury:

"**THE COURT**: You should understand that what the DA is saying and that the law says, is that the defense never has to call any witnesses, never has to produce any evidence. (N.T., 3/1/2013, pg. 118)

Counsel for Co-Defedant did not object further to the Court's instruction.

It is clear that in his closing counsel for the Commonwealth never intended for the jury to believe that the burden of proof had somehow shifted to Defendant. In prefacing his remarks he made it clear that "the burden of proof is on me. It never shifts. It's my burden to prove my case." The Court's curative instruction to the jury was more than sufficient to address any taint which may have been occasioned by counsel's remarks.

## IV. DEFENDANT'S SENTENCE WAS NOT PROPER.

Defendant, in his ninth complaint, complains: "The trial court erred in sentencing appellant for two inchoate crimes, i.e. attempted murder and conspiracy to commit attempted murder." Defendant is not challenging his convictions on these charges but his sentences with regard to them. Although Defendant did not timely object at sentencing, the Court recognizes that a complaint addressing the legality of a sentence may be raised at any time. *Commonwealth v. Ford*, 315 Pa. Super. 281, 461 A.2d 1281 (Pa. Super. 1983) The Court notes that Defendant does not challenge the cumulative sentences rendered but does challenge the Court's sentencing him on two separate inchoate crimes, thus implicating the legality of his sentence. 18 Pa.C.S.A. § 905 provides in part: "Grading of criminal attempt, solicitation and conspiracy (a) GRADING.-- Except as otherwise provided in this title, attempt, solicitation and conspiracy are crimes of the same grade and degree as the most serious offense which is attempted or solicited or is an object of the conspiracy." Furthermore, 18 Pa.C.S.A. § 906 provides: "A person may not

18

be convicted of more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy for conduct designed to commit or to culminate in the commission of the same crime."

At the conclusion of his trial, Defendant was found guilty of both attempted murder and conspiracy to commit murder, all arising from the single act of the shooting of Mr. Members which resulted in serious bodily injury. 18 Pa.C.S.A. § 1102 provides in part: "(c) Attempt, solicitation and conspiracy.--Notwithstanding section 1103(1) (relating to sentence of imprisonment for felony), a person who has been convicted of attempt, solicitation or conspiracy to commit murder, murder of an unborn child or murder of a law enforcement officer where serious bodily injury results may be sentenced to a term of imprisonment which shall be fixed by the court at not more than 40 years. Where serious bodily injury does not result, the person may be sentenced to a term of imprisonment which shall be fixed by the court at not more than 20 years." Defendant was subsequently sentenced to incarceration in a state correctional institution for a period of 15 to 30 years on the charge of attempted murder as well as a consecutive term of confinement of 5 to 10 years on the charge of conspiracy to commit murder, for a total combined period of incarceration of 20 to 40 years on these two charges, the maximum allowable on either one of these charges. In view of these circumstances, the Court recommends that this matter be remanded only for the purpose of resentencing Defendant.

## CONCLUSION

The Court finds that its evidentiary rulings are supported on the record. The Court also finds that Defendant's sentencing on two inchoate offenses is improper and recommends that this matter be remanded for re-sentencing.

BY THE COURT:

December 19, 2013

HON. CHARLES J. CUNNINGHAM, III